EASTERN DIST.
*March*, 1836.

ADAMS
*vs.*
HURST.

work done, the reference being as to a memorandum deliberately made at the time.

======

## ADAMS *vs.* HURST.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The wife can obtain a divorce, *a vinculo matrimonii*, from her husband, when it is in proof that he has lived in open adultery with another woman, and there is no evidence, at the institution of suit, that a reconciliation has taken place.

The statute of 1827, relative to divorces, authorises a divorce, on the part of the wife, when the husband keeps a concubine in the common dwelling, or keeps her publicly in any other house. It is also held, that living with her, at *her own house*, is within the meaning of the law.

This is an action of divorce, *a vinculo matrimonii*. The plaintiff alleges she was lawfully married to the defendant, in North Carolina, in 1812, and that he had left her and came to Louisiana to reside. She further states, that about a year before bringing suit, she also came to this state, in the hope that he would take her to his bed and board again; but that she found him living in open and avowed adultery with another woman, and that he has continued to live so until within three weeks before suit. She prays for a divorce from the bands of matrimony.

The defendant admitted the marriage, but denied the other allegations of the petitioner.

EASTERN DIST.
. *March*, 1836.

ADAMS
*vs.*
HURST.

Upon these pleadings the cause was submitted to the court. There was abundant testimony in support of the facts alleged.

The district judge decided that the evidence did not show that the defendant was living in a state of concubinage, at the commencement of the suit, or the time of trial; he, therefore gave judgment for the defendant. The plaintiff appealed.

*Deblieux*, for the plaintiff.

*Shepard* and *Buchanan, contra.*

*Mathews, J.,* delivered the opinion of the court.

This is a suit brought by a wife against her husband, to obtain a divorce, *a vinculo matrimonii.* The improper conduct charged against the defendant is abandonment of the plaintiff, and living in open concubinage and adultery with another woman. Judgment was rendered in the court below in favor of the defendant, from which the plaintiff appealed.

The record affords no positive evidence of the length of time during which the wife was abandoned by her husband. There is ample proof, however, that he has lived in concubinage and open adultery with a free woman of color, named Rose Metoyer, and that he thus lived a considerable length of time, making the house of his concubine his home. It is true, as assumed by the judge, *a quo*, in deciding the case, that no testimony was adduced to show that the defendant was thus living in open adultery at the period when the present suit was commenced; nor is it shown that any reconciliation had taken place between the parties at any time after their long separation. This proof ought to have been offered on the part of the defendant, if he intended to avail himself of the exceptions recognised by the act of 1827, on the subject of divorces. A just decision of the case depends on a proper interpretation of this law.

By the first section, it is enacted that adultery on the part of the husband is a good cause for a divorce claimed by the

wife, when he has kept a concubine in the house of their ~~EASTERN DIST.~~ common residence, or when he has kept one publicly and *March*, 1836. openly in any other house ; and such conduct on the part of the husband affords good grounds to the wife to claim a divorce, unless subsequent to it a reconciliation may have taken place between the parties. How an action of this kind may be barred, is shown by the articles 149 and 150 of the *Louisiana Code.* But, in the present case, the record contains no evidence to support an exception to the action.

The testimony shows clearly, that the defendant did live in a state of open concubinage and adultery with Rose Metoyer. He has, therefore, in the terms of the law, lived in this state ; and although he did not keep his concubine in the common dwelling of himself and wife, he certainly kept her, openly, in another house; and it does not, in our opinion, in any manner change the true spirit and meaning of the law, that the place of keeping her was the house of his concubine, for the circumstance of her having housed and fed him does not change the nature of the offence, although it may render the offender more degraded and despicable in the opinion of the orderly and virtuous part of the community. Adultery is a direct and immediate cause for divorce from the bonds of matrimony, according to the fourth section of the act of the legislature above cited ; and it appears to us that the testimony fully proves the offence in the present instance, in terms of the law, as charged against the defendant.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed and annulled. And, proceeding here to give such judgment as, in our opinion, ought to have been given in the court below, it is further ordered, adjudged and decreed, that the bonds of matrimony heretofore existing between the plaintiff and her husband be dissolved, and that she be, and is hereby, divorced from her said husband, and that he pay costs in both courts.

ADAMS
*vs.*
HURST.

The wife can obtain a divorce *a vinculo matrimonii* from her husband, when it is in proof he has lived in open adultery with another woman, and there is no evidence at the institution of suit that a reconciliation has taken place.

The statute of 1827, relative to divorces, authorises a divorce on the part of the wife, when the husband keeps a concubine in the common dwelling, or keeps her publicly in any other house. It is also held, that living with her at *her own house*, is within the meaning of the law.