248 So.2d 867 (1971)
Russell STROTHER, Plaintiff and Appellant,
v.
Nelda C. STROTHER, Defendant and Appellee.
No. 3414.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1971.
Rehearing Denied June 25, 1971.
*868 Tate & Tate, by Paul C. Tate, Mamou, for plaintiff-appellant.
Pharis & Pharis, by F. Jean Pharis, Alexandria, for defendant-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
This is a suit for divorce on the grounds of adultery and for custody of the 10 year old child, Debbie Strother, born of the marriage. The district court rendered judgment granting a divorce in favor of the plaintiff husband but awarded custody of the child to the defendant wife. The plaintiff husband appealed only from that portion of the judgment awarding custody of the child to its mother. The defendant wife has not appealed or answered the appeal.
This case was consolidated for consideration on appeal with Strother v. Strother, La.App., 248 So.2d 866 in which a separate judgment is being rendered by us this date. In that case, the wife had previously been awarded a judgment of separation from bed and board on the grounds of cruelty, custody of the child, alimony and attorney's fees.
Defendant's first argument on appeal is that the trial court erred in overruling defendant's exception to the jurisdiction of the court over the husband's action for divorce. The short answer to this argument is that a judgment cannot *869 be modified, revised or reversed on appeal in favor of a party who has neither appealed nor answered the appeal. See Texas Gas Transmission Corp. v. Hebert, La.App., 207 So.2d 368 (3rd Cir. 1968); Post v. Rodrigue, La.App., 205 So.2d 67 (4th Cir. 1968); Bradford v. Patterson, La.App., 159 So.2d 342 (2d Cir. 1963); LSA-C.C.P. Art. 2133. The defendant wife having failed to appeal or answer the appeal, the judgment of divorce in favor of the plaintiff husband is now final.
The only other issue is the custody of the minor child. The general facts are that plaintiff and defendant were married in Allen Parish, Louisiana, in 1957 and resided there together until they separated in January of 1969. On November 25, 1969, the district court rendered a judgment of separation from bed and board in favor of the plaintiff wife in the companion suit. The court also awarded the wife custody of the child and ordered defendant to pay $190 per month alimony pendente lite for the support of the mother and child.
Mrs. Strother secured an order from the court allowing her to move with the child to Orange, Texas. She actually moved to Orange on November 6, 1969, and lived with Debbie in a small house at 1126 Irving Street. She says she looked for work but could find none.
Mr. Strother employed a private investigating agency to take the house under surveillance for purposes of determining whether a man was living in the house with Mrs. Strother and the child. Mr. and Mrs. John Jaynes, private investigators from Lake Charles, testified that they commenced surveillance of the house at 1126 Irving Street, in Orange, Texas, on Monday, January 26, 1970. They watched the house January 26 through January 29 and then left and worked on another case for four days. They returned to Orange and observed the house in question again on February 3rd, 4th and 5th, of 1970. Generally, Mr. and Mrs. Jaynes testified they saw a man, later identified to them as J. W. Mayo, living in the house with Mrs. Strother and the child the same as any married family. Each evening Mr. Mayo would return from his employment in a city water department truck and go into the home where he was greeted by the mother and child. They ate supper and at about 10:30 the lights were turned off and the occupants apparently retired. The next morning Mr. Mayo would arise and go to work in his truck at about 7:30 a. m.
Mrs. Strother testified she had known Mr. Mayo for about a year. She admitted he visited the house in Orange two or three times a week when she first moved there and that finally he moved into the home for about the last week before she moved on February 6, 1970. She also concedes that when she moved out of the house in Orange, Mr. Mayo remained there. However, she denies any act of adultery with Mr. Mayo, contending that she and her child slept in one bedroom and Mr. Mayo in the other.
Plaintiff also alleged that Mrs. Strother committed acts of adultery in Allen Parish and Rapides Parish, Louisiana, on many occasions prior to and since January 21, 1969, the date of separation. On objection by counsel for defendant, the trial judge excluded evidence to support these allegations on the grounds that the dates and places were not alleged with sufficient particularity. The ruling was correct.
Several well established jurisprudential rules are applicable here. Under LSA-C.C. Art. 157, which provides for custody of children after divorce, the paramount consideration is the welfare and best interest of the child. Under this rule, custody of minor children should be awarded to the mother unless she is found to be morally unfit or physically or mentally incapable of taking care of them. See Kieffer v. Heriard, 221 La. 151, 58 So.2d 836; Sampognaro v. Sampognaro, *870 215 La. 631, 41 So.2d 456; and Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959). Proof of one act of adultery, or even of several acts with the same paramour, does not necessarily render morally unfit a mother who is otherwise suited for custody, Salley v. Salley, supra, Estopinal v. Estopinal, 223 La. 485, 66 So.2d 311; Messner v. Messner, 240 La. 252, 122 So. 2d 90. However, where the mother has recently lived in open and public adultery with her paramour for a substantial period of time, in total disregard of the moral principles of our society, the courts have generally held the mother is morally unfit for custody. See Salley v. Salley, supra, Sampognaro v. Sampognaro, supra, Brunt v. Brunt, La.App., 166 So.2d 71 (3rd Cir. 1964); West v. West, La.App., 170 So.2d 160 (2d Cir. 1964); Tuggle v. Tuggle, La. App., 235 So.2d 166 (2d Cir. 1970); Morris v. Morris, La.App., 152 So.2d 291 (1st Cir. 1963). In custody cases, much discretion is left to the trial judge, but his decision is subject to review by the appellate court and will be upset where clearly erroneous. See the Salley, Sampognaro and Morris cases cited supra.
In the present case, the weight accorded the decision of the trial judge is minimized by the fact that he had an erroneous understanding of the law. This is shown by the following from the transcript:
"MR. TATE: We call Mrs. Nelda C. Strother under cross-examination.
"THE COURT: Take the stand, Mrs. Strother, Before we go into the areas of the act of adultery, unless the acts were committed in front of the child in question, the evidence shall not be admitted. That's the law.
"MR. TATE: In the presence of the child?
"THE COURT: Right. In other words, I have had several cases where it was a known fact that the mother was probably committing adultery, but away from the children. And the Court said that was * * *
"MR. TATE: But Your Honor, that means in another location. It doesn't mean in the home. Your Honor is not ruling on that at this time?
"THE COURT: I'm saying that even if she did commit adultery away from the child there is no grounds for change of custody. If that's the basis of your law suit * * *."
No cases have been cited, nor have we found any, which support the proposition that acts of adultery do not render a mother unfit for custody unless committed in the presence of the child. On the contrary, proof of moral unfitness by acts of adultery committed outside the presence of the child is the general rule. See Brunt v. Brunt, La.App., 166 So.2d 71 (3rd Cir. 1964); Kieffer v. Heriard, 221 La. 151, 58 So.2d 836 (1952); West v. West, La. App., 170 So.2d 160 (2d Cir. 1964); Morris v. Morris, La.App., 152 So.2d 291 (1st Cir. 1963).
In the present case, Mrs. Strother first denied that Mayo had lived with her and the child in Orange, Texas. Later, she admitted that Mayo had "stayed there for a week" before she moved on Friday, February 6, 1970. Mr. & Mrs. John Jaynes, the private investigators, testified that when they first took the house under surveillance on Monday, January 26, 1970, Mayo was living there at the time. Each of the seven nights of their surveillance they saw Mayo return home from work, spend the night in the house and leave the next morning for work. Under this evidence, we find it is proved that Mrs. Strother was living in open adultery with Mr. Mayo for at least the 11-day period from Monday, January 26, 1970, on which the investigators commenced their observation, until February 6, 1970, on which date Mrs. Strother says she moved back to Oakdale.
*871 This case does not fall within the jurisprudence holding that indiscretions resulting from transitory and momentary weakness are not necessarily indicative of unfitness for custody. The proof here is of an adulterous relationship which was calculated, open and public. It continued over a substantial period of time, in total disregard of basic moral principles of our society. The child was in the house at the time and was old enough to understand her mother's actions. Exposure to such conduct necessarily has a bad effect on the children involved. Furthermore, the misconduct in question occurred recently and there is no indication in the record that Mrs. Strother has changed her ways.
The best interest of the child will be served by awarding custody to the father. The evidence shows that he is still living in the home near Oakdale which was the matrimonial domicile at the time of the separation. Mr. Strother is employed as an auctioneer by cattle auctions and he also owns three rent houses. His monthly income is about $420. He says that when he is away from home during the day the child can be cared for by his brother's son's wife, who lives nearby. The evidence as a whole shows that Mr. Strother is fit and able to care for the child.
For the reasons assigned, those portions of the judgment which award to the wife custody of the minor child and alimony for the child's support are reversed and set aside. The judgment is amended to award custody of the minor child, Debbie Strother, to her father, subject to the rights of the defendant mother to see and visit the child at reasonable times and places. Otherwise than as herein amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellee.
Affirmed, as amended.